ARCHIE J. LOCKER, APPELLANT, v. METROPOLITAN LIFE INSURANCE COMPANY, A CORPORATION, RESPONDENT.

Argued May 27, 1930—Decided October 20, 1930.

For the appellant, *Paul Rittenberg*.

For the respondent, *McCarter & English* (*Conover English,* of counsel).

The opinion of the court was delivered by

TRENCHARD, J. The trial judge directed a verdict for the defendant below and the plaintiff appeals from the consequent judgment.

The suit was on a policy of life insurance and the defense was fraudulent misrepresentation. The statement made by the insured to the medical examiner in her application was dated May 19th, 1927. The policy was dated May 25th, 1927. The insured died August 22d, 1927, of pulmonary tuberculosis.

The fourth defense was that she was asked and had answered as follows:

"5. Have you ever been an inmate of, or have you ever received treatment at an asylum, hospital, sanatorium or cure? If yes, give date, duration, name of ailment and name of institution. No."

The undisputed proofs were that insured had, prior to the date of making said statement in the application, been an inmate of and had received treatment at a hospital or sanatorium, namely, the New Jersey State Sanatorium for Tuberculosis at Glen Gardner, New Jersey.

The sixth defense was that she had answered falsely that she had never suffered from disease of the lungs.

The eighth defense was that she was asked and had answered as follows:

"(g) Have you consulted a physician for any ailment or disease not included in your above answer? No."

The undisputed proofs were that the insured had, prior to the date of making such statement in her application, consulted physicians for an ailment or disease not included in her above answer, namely, for pulmonary tuberculosis.

The ninth defense was that she was asked and had answered as follows:

"13. What physician or physicians, if any, not named above, have you consulted or been treated by within the last five years and for what illness or ailment? If none, so state. None."

The undisputed proofs were that insured, within five years prior to the date of the statement, had consulted and been treated by physicians for an illness or ailment, namely, pulmonary tuberculosis, and had failed to name in her statement

such physicians, who were Drs. Becker, Hagen, Gutowski and Gramsch.

In her application the insured had given herself a clean bill of health. As a matter of fact, it appeared conclusively that she had been continuously suffering from tuberculosis, beginning with April of 1925; had been treated for it by Dr. Becker, of Paterson; had been advised by Dr. Hagen, of the Tuberculosis Clinic of Paterson Board of Health, to go to Glen Gardner Tuberculosis Sanatorium; had gone to Glen Gardner, where she remained from May 6th, 1925, to September 23d, 1925. She did not tell the company's medical examiner, Dr. McCamey, any of these facts, although he asked her the appropriate questions to elicit that information. The proofs show conclusively that these statements were untrue and known by her to be untrue, were made with an intent to deceive, and were material to the risk.

We think that the trial court properly directed a verdict for the defendant.

The policy provides as follows:

"This policy is issued in consideration of the application therefor, copy of which application is attached hereto and made part hereof."

\*        \*        \*        \*        \*        \*        \*

"This policy and the application therefor constitute the entire contract between the parties, and all statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties, and no statement shall avoid this policy or be used in defense of a claim hereunder unless it be contained in the application therefor and a copy of such application is attached to this policy when issued."

The case is almost identical with that of *Kerpchak* v. *John Hancock Mutual Life Insurance Co.*, 97 *N. J. L.* 196, in this court. There is was pointed out, where, as here, a policy provides, as required by our Insurance law, that "all statements made by the insured, shall, in the absence of fraud, be deemed representations and not warranties," the policy will be avoided for a misrepresentation in the application,

made a part thereof, if the misrepresentation be material and fraudulent; that is to say, if it be the statement of something as a fact, which is untrue, and which the insured stated, knowing it to be untrue, and with an intent to deceive, or which he stated positively as true, without knowing it to be true, and which had a tendency to mislead; such fact in either case being material to the risk. We also therein held that every fact which is untruly stated or wrongfully suppressed must be regarded as material if the knowledge or ignorance of it would naturally and reasonably influence the judgment of the underwriter in making the contract at all, or in estimating the degree or character of the risk, or in fixing the rate of premium.

The application of these rules to the facts of the present case justify the direction of the verdict for the defendant. See, also, *Prahm* v. *Prudential Insurance Co.*, 97 *N. J. L.* 206.

We pause to remark that there is no evidence—not even a suggestion—in this case of lack of intelligence or understanding of the insured, as was the situation in *Guarraia* v. *Metropolitan Life Insurance Co.*, 90 *N. J. L.* 682; and in *Woynarowski* v. *Metropolitan Life Insurance Co.*, 3 *N. J. Mis R.* 1066.

The appellant argues that the plaintiff is not bound by the fraudulent representations made by the insured as set forth in the application for the policy. He says the application annexed to and made a part of the policy is not the application upon which the policy was issued, because (1) the application was for a $10,000 twenty-payment life policy, and a $5,000 twenty-year endowment policy was issued; and (2) the copy of the application annexed to and made a part of the policy is not a copy of the application on which the policy was issued.

We think that the application annexed to and made a part of the policy is the application upon which the policy was issued.

As we have pointed out the policy states that: "This policy is issued in consideration of the application therefor, copy

of which application is attached hereto and made a part hereof," and that "this policy and the application therefor constitute the entire contract between the parties."

Part B of the application contains the statement to the medical examiner with respect to the insured's health, &c. It is quite distinct from part A of the application which contains statements as to the amount and plan of insurance desired and facts other than those relating to the health of the insured.

The policy issued to and accepted by the insured was identical with the request of the insured, except that it was a $5,000 twenty-year endowment policy, whilst that *desired* by the applicant was $10,000 twenty-payment life.

The beneficiary named as requested was the insured's brother, Archie J. Locker, who is the plaintiff.

The appellant's argument is that because the policy differed from the application in the respects stated, there is no relation between the application and the policy, and that the questions and answers contained in part B of the application, made to the medical examiner, were not binding on the insured, and therefore are not binding on the plaintiff.

It may be assumed, as appellant argues, that an application for insurance without more is simply a request or proposal for a policy. But here the defendant company was willing to issue her a policy, but for a less amount and of somewhat different plan than the one desired. She acquiesced in the change and the company did issue the policy in suit on her application, which she accepted and paid the premiums thereon. The fact that the insured accepted the policy for a less amount and on a somewhat different plan, on the application originally made, and paid the premiums thereon, is a complete answer to the appellant's contention. Assuming again, as appellant argues, that the issuance of the policy in suit was, in effect, the rejection of the offer of the insured to accept the policy applied for, nevertheless, the issuance of the policy as written, and the acceptance of it by the insured, constituted the making by the company of a counter proposal

which became a consummated contract upon such meeting of the minds. 32 *C. J.* 1104, 1107, 1236, §§ 191, 196, 409, and cases there cited.

In other words, where there is in legal effect a counter offer made by the company which is accepted by the applicant, and the policy is delivered and accepted and the premium paid, a binding contract results according to the terms of the policy. There is no dispute in the case at bar that the policy in suit was issued, that it was accepted by the insured, and that she paid the premiums on it. Nor can there be any doubt that the policy was issued upon the application made and signed by the applicant, copy of which is annexed to and made a part of the policy by its very terms.

The appellant says that the defendant did not accept the proposal of Anna Cavanagh because it did not issue the policy for which application was made. But the fact is that the company acting upon such application expressed its willingness to and did issue to her the policy in suit, which policy she accepted and upon which she paid premiums. It must be kept in mind that there is a distinction between part A and part B of the application.

Part B of the application would be the same whether the one at first desired or the one actually issued was under consideration.

The distinction between parts A and B of applications of this character was commented on by this court in *Dimick* v. *Metropolitan Life Insurance Co.,* 69 *N. J. L.* 384.

Of course the policy was issued upon that application. No other application was ever submitted to the company and no statements were made to the company's medical examiner other than those contained in part B, which is annexed to and made a part of the policy. It would be absurd to say in the face of the record that the policy was issued without any application therefor. We believe that it is common knowledge that policies of life insurance are issued on written applications;. that the insurance companies rely on the statements made therein, with respect to the physical condition of the

applicant in passing upon the request, and that "life insurance companies do not accept for life insurance tubercular persons." *Duff* v. *Prudential Insurance Co.,* 90 *N. J. L.* 646. It cannot be reasonably contended that the misstatements of the insured in the application for the insurance policy did not induce the contract of insurance. On the contrary, the plain implication is that the policy which was issued was issued upon the faith of the statements made in the application submitted. The fact that the applicant was content to accept the policy issued and pay the premiums thereon indicates her acquiescence in the change which the company made, and shows that she was content to accept the policy issued upon the application which she made.

Appellant's reliance is upon the case of *Aetna Indemnity Co.* v. *J. R. Crowe Coal and Mining Co.,* 154 *Fed. Rep.* 545. That case is readily distinguishable from the case at bar. There the court pointed out that the statement relied upon to defeat recovery was made in connection with an application for a different bond, and that there was no relation between it and the renewal contract sued on. Here the policy sued on was the very policy which was issued as a result of the application which was made by the insured for the benefit of the plaintiff. In the Aetna case the contract sued on was an entirely different contract from that for which application was made, and the contract there sued on had been made and was in existence long before the application for the policy which was not issued was made. In the case at bar the insured made only one application to the insurance company. This application which she made contained material statements on her part designed to influence the insurance company in issuing the policy. Upon the faith of those statements the policy in suit was issued. Such statements the insured knew to be untrue when she made them. It is idle now to argue that the application which was made and upon the faith of which the policy in suit was issued, was not the application on which that policy was issued. The proofs show that the policy in suit was issued upon this application.

A copy of the application is annexed to and made a part of the policy. That negatives the idea that any other application could have been made for this policy, or that no application was made for this policy. There is no proof or suggestion that any other application was made.

But the appellant contends that the copy of the application annexed to the policy and made a part thereof is not a copy of the application upon which the policy was issued.

We think that the contention is without merit. It has for its only foundation the fact that in the copy the complete signature of the applicant is not reproduced.

It appears that the copy of the application, both parts A and B, annexed to the policy is a photograph of the original. The only difference between the photograph and the original is that the photograph of the signature of the applicant, Anna Cavanagh, because of the carelessness of the photographer, does not include the whole signature, the top part of the letters only being reproduced. It was, nevertheless, we think, a substantial reproduction of the application and served its purpose of binding the applicant to the truth of the statements therein. The policy stated that it was "issued in consideration of the application therefor, copy of which application is attached hereto and made a part hereof," and the application, and the copy thereof attached to the policy stated plainly in its body that it was made by Anna Cavanagh, the insured.

These conclusions, in effect, dispose of every question raised and argued and requiring comment.

The judgment below will be affirmed, with costs.

*For affirmance*—The Chancellor, Chief Justice, Trenchard, Campbell, Lloyd, Case, Bodine, Daly, Van Buskirk, McGlennon, Kays, Hetfield, Dear, Wells, JJ. 14.

*For reversal*—None.