AMELIA STANGO, PLAINTIFF-RESPONDENT, v. METRO-POLITAN LIFE INSURANCE COMPANY, DEFENDANT-APPELLANT.

Submitted May term, 1932—Decided October 17, 1932.

Before GUMMERE, CHIEF JUSTICE, and Justices BODINE and DONGES.

For the defendant-appellant, *Perkins, Drewen & Nugent.*

For the plaintiff-respondent, *Edward Cohn (Frank Cohn,* of counsel).

PER CURIAM.

This is an appeal from the Common Pleas. The action was brought upon a policy of life insurance issued by the

defendant on the life of the deceased, Antonio Stango. The beneficiary, Amelia Stango, his wife, brings the suit. The policy was in the usual form with application annexed and made a part thereof.

In the application, the insured made statements relative to his prior health and to medical and surgical treatments undergone by him. The defense charged that these statements were false and fraudulent to the knowledge of the applicant, and thereby sought to avoid liability. The trial court refused to direct a verdict, and error is assigned therefor.

The application for the policy was made June 17th, 1929. It was issued August 1st, 1929. The insured died November 4th, 1930.

The following questions and answers were contained in the application: "No. 7 (a) When last sick? December, 1927. (b) Nature of last sickness? Grippe. (c) How long sick? Ten days. No. 9. Any physical or mental defect or infirmity? No. No. 11. Have you had any surgical operation, serious illness or accidents? If so, give date, duration and name of ailment. No. 18. Have you been attended by a physician during the last five years? If yes, give name of complaints, dates, how long sick and names of physicians. Yes, grippe, 1927. Ten days. Dr. Guidi. No. 20. How much time have you lost from work through illness during the last five years? Ten days."

The proofs show that the insured was a member of a beneficial fraternal organization known as "The Sons of Italy." This fraternity paid to its members benefits during sickness. It appears that on January 2d, 1928, benefits were paid to the insured for illness of two weeks and one day. On July 26th, 1928, benefits were paid for illness of two weeks and two days, and on January 29th, 1929, benefits were paid for illness of two weeks.

The question in the application "when last sick" was not ambiguous and called for a statement of fact. *Kerpchak* v. *John Hancock Mutual Life Insurance Co.*, 97 *N. J. L.* 196; 117 *Atl. Rep.* 836. The proof of payment of sick benefits is certainly some evidence of illness. Dr. Guidi, the physician

named in the application, testified that he knew the insured; that on January 13th, 1929, he treated him for grippe; that on the 21st he developed stricture and was sent to Dr. Lerman, a specialist. Undoubtedly, this was one of the illnesses for which sick benefits were paid, because Dr. Guidi was the lodge physician. A year later, the same difficulty developed and an operation was performed. It is perfectly apparent that no person could suffer from stricture and not know it, and it is equally apparent that the insured had recurring periods of illness, over a period of years, which were not revealed in his application.

The testimony of Dr. Lerman is to the effect that not only was there a stricture but that the same was serious. He was was not so certain that he treated the man in 1929, as was Dr. Guidi. His records were in accordance with Dr. Guidi's statements, but he did not care to be too certain that he had properly affixed the date on his records. This circumstance, however, did not make a jury question. There was not only proof of the treatment in 1929 unrevealed to the insurance company, but there was also the proof of three unstated periods of illness within the last two years. It is one thing to insure a man who has not been sick for two and a half years and quite a different matter to insure one who has been sick every six months for the last two or three years. "When last sick" means the last sickness and not one picked out at random some years before. When called upon to tell of his illness during the last five years a medical history over that period was required and not an evasion. There is nothing to indicate that the questions were not understood, and all the evidence indicates that the false answers were made understandingly, knowingly and willfully. Stricture is a serious ailment and also recurring periods of illness are serious.

Death was caused by a ruptured bladder, following a fall. Retention of urine sets up an inflammatory condition in the bladder wall, rendering it less capable of resistance.

The facts unimpeached and uncontradicted required a direction of a verdict. *Fish* v. *Metropolitan Life Insurance Co.*, 73 *N. J. L.* 619; 64 *Atl. Rep.* 109; *Guarraia* v. *Metropolitan*

*Life Insurance Co.*, 90 *N. J. L.* 682; 101 *Atl. Rep.* 298; *Brunjes* v. *Metropolitan Life Insurance Co.*, 91 *N. J. L.* 296 102 *Atl. Rep.* 693; *Kerpchak* v. *John Hancock Mutual Life Insurance Co., supra;* 117 *Atl. Rep.* 836; *Prahm* v. *Prudential Insurance Co.*, 97 *N. J. L.* 206; 116 *Atl. Rep.* 798; *Locker* v. *Metropolitan Life Insurance Co.*, 107 *N. J. L.* 257; 151 *Atl. Rep.* 627.

The judgment below is reversed, with costs.