809 A.2d 796 (2002)
355 N.J. Super. 96
STATE of New Jersey, Plaintiff-Respondent,
v.
Muhammad A. NASIR, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted October 28, 2002.
Decided November 15, 2002.
*798 Samuel C. Inglese, Metuchen, attorney for appellant.
David Samson, Attorney General, attorney for respondent (Patrick DeAlmeida, Deputy Attorney General, of counsel and John C. Grady, Deputy Attorney General, on the brief).
Before Judges PETRELLA, BRAITHWAITE and LINTNER.
*797 The opinion of the court was delivered by BRAITHWAITE, J.A.D.
Defendant Muhammad A. Nasir was found to have violated the New Jersey Insurance Fraud Prevention Act (the "Act"), N.J.S.A. 17:33A-1 to -30. The violations arose because he provided false statements on both his application for disability benefits to Northwestern Mutual Life Insurance Company ("Northwestern Mutual") and his claim form to recover disability benefits. Plaintiff State of New Jersey, through the Office of the Insurance Fraud Prosecutor, filed a two-count complaint against defendant seeking, inter alia, the imposition of a civil penalty and the assessment of cost and counsel fees against defendant. The first count alleged fraud with respect to defendant's application for disability insurance. The second count alleged fraud with respect to defendant's claim for disability benefits. On the first count, summary judgment was granted in favor of the State and a civil penalty of $5,000 was imposed on defendant. The order also provided that the State would be awarded counsel fees and costs at the conclusion of the case.
The second count was tried by the court. Defendant was found to have violated the Act and an additional civil penalty of $2,500 was imposed on defendant. Defendant was also ordered to pay $36,210 in counsel fees to the State.
*799 Defendant now appeals and contends that: (1) the trial judge erred in granting summary judgment on count one because there was no compliance with N.J.S.A. 17:33A-6; (2) summary judgment was inappropriate on count one because there were material issues of fact with respect to his knowledge; (3) the assessment of civil penalties and counsel fees was cumulative; and (4) he was deprived of the effective assistance of counsel. We reject these contentions and affirm.
Defendant, an insurance producer for Northwestern Mutual, began manifesting symptoms of a herniated disk in early February 1996. Back pain, in addition to numbness and tingling in his fingers, prompted him to consult Mohammed Shafi, M.D., on February 12, 1996, and again on April 15, 1996. Dr. Shafi prescribed defendant Relafen, a drug used to treat arthritis, and instructed him to do strengthening exercises; additionally, on his second examination of defendant, Dr. Shafi advised defendant to undergo an MRI scan.
The scans were conducted on April 17 and 25, 1996. The second scan results, dated April 26, revealed the herniation. Dr. Shafi's records indicate that he informed defendant of the MRI results on April 29, 1996. The severity of defendant's problem required surgery to ultimately avoid paraplegia.
In the interim, on April 27, 1996, defendant applied for disability insurance from his employer, Northwestern Mutual. In his application form defendant answered "no" to the following two questions: (1) "[h]ave you had any physical, mental or emotional condition, injury, or sickness in the past 5 years?"; and (2) "[h]ave you consulted or been attended by a physician or practitioner for any cause during the past 5 years?" On that same day, defendant filled a prescription for Relafen, the drug prescribed by Dr. Shafi.
Based on the submitted application, Northwestern Mutual provided defendant with disability insurance on May 7, 1996. On May 23, 1996, defendant underwent spinal fusion surgery. After almost a year spent recovering, on July 3, 1997, he submitted a claim for benefits to Northwestern Mutual. On his disability claim form, defendant stated that his surgery rendered him disabled and unable to work from May 20, 1996, to April 15, 1997. Further, defendant attested that he "first notice[d]" his illness on May 7, 1996, and that he had never had this condition manifested by numbness in his hands before. May 7, 1996, is both the day that defendant claimed he first noticed his symptoms and the day that Northwestern Mutual provided disability insurance for defendant.
The proximity of those events triggered suspicion, and an investigation ensued. Northwestern Mutual discovered defendant's true medical history and understood it to contradict that provided by defendant on his application for disability insurance. As such, Northwestern Mutual denied his claim and rescinded the policy. Northwestern Mutual referred the case to the Office of the Insurance Fraud Prosecutor and the complaint noted above was filed.

I
In point one, the issue is whether the trial judge erred in granting summary judgment because the insurance application signed by defendant did not contain a provision warning that "[a]ny person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties." N.J.S.A. 17:33A-6c. Defendant did not raise this issue below, therefore we will review it under a plain error standard. Thus, we will only reverse if defendant can *800 show that the error was "clearly capable of producing an unjust result." R. 2:10-2.
Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2. Even where the allegations of the pleadings may raise an issue of fact, if other documents or papers show that there is no real material issue, then summary judgment can be granted. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 75, 110 A.2d 24 (1954). However, "[b]are conclusions in the pleadings, without factual support in tendered affidavits, will not defeat a meritorious application for summary judgment." United States Pipe & Foundry Co. v. American Arbitration Ass'n, 67 N.J.Super. 384, 399-400, 170 A.2d 505 (App.Div.1961).
The trial judge need not decide issues of fact, he or she must only decide that there are none. Brill v. Guardian Life Ins. Co., 142 N.J. 520, 540, 666 A.2d 146 (1995); Judson v. Peoples Bank & Trust Co. of Westfield, supra, 17 N.J. at 75, 110 A.2d 24; R. 4:46-5. To determine whether there is a genuine issue of fact, the judge must decide whether
the competent evidential materials presented, when viewed in the light most favorable to the nonmoving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.... If there exists a single, unavoidable resolution of the alleged disputed issue of fact, that issue should be considered insufficient to constitute a `genuine' issue of material fact for purposes of Rule 4:46-2.
[Brill, supra, 142 N.J. at 540, 666 A.2d 146.]
Thus, "when the evidence `is so one-sided that one party must prevail as a matter of law,' ... the trial court should not hesitate to grant summary judgment." Ibid.
Rule 4:46-2(c) was amended after Brill in 1996 to state: "An issue of fact is genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the nonmoving party, would require submission of the issue to the trier of fact."
On appeal, we are guided by these same standards. We decide first whether there was a genuine issue of fact. If there was not, we then decide whether the trial judge's ruling was correct. Prudential Property Ins. v. Boylan, 307 N.J.Super. 162, 167, 704 A.2d 597 (App.Div.1998).
Here, the motion judge granted the State's motion for summary judgment on count one. As noted, defendant raises for the first time on appeal the defense that N.J.S.A. 17:33A-6 requires that insurance forms contain a statement notifying applicants that they will be subject to criminal and civil penalties if they "knowingly" mislead or falsify information. Defendant's application form contained no such language. Defendant, therefore, contends that no suit could be filed against him by the State. His argument is that "the notice provision is a condition precedent to prosecution under the Act." Defendant asserts that despite his failure to raise this issue below, we should entertain this argument because it is of significant public concern.
N.J.S.A. 17:33A-6 sets forth the language that in substance is required to be on claim forms and applications. It does not, however, set forth any consequences for an insurer's failure to do so. Defendant argues that the consequence should *801 be to "create a bar to the enforcement of the remaining provisions of the statute." We disagree.
First, defendant did not raise the issue below and therefore it is waived.
It is a well-settled principle that our appellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available `unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest.'
[Nieder v. Royal Indemnity Ins. Co., 62 N.J. 229, 234, 300 A.2d 142 (1973) (citation omitted).]
Further, however, our substantive review of the issue leads to a rejection of defendant's claim. This is not a suit by Northwestern Mutual seeking to be relieved from paying insurance benefits, but instead is an action by the State to penalize defendant for committing insurance fraud. Whether the warning language required by the statute was on the application form or not, the fraud was committed. Thus, defendant's assertion that the statutory language is a condition precedent to a prosecution by the State under the Act is rejected.
N.J.S.A. 17:33A-6 does not set forth a sanction for failure to comply with its terms. In addition, the actions that constitute fraud under the Act, N.J.S.A. 17:33A-4, do not incorporate the requirement of compliance with N.J.S.A. 17:33A-6 in order for the State to prosecute a violation of the Act. Furthermore, when read in light of the purpose of the Act, N.J.S.A. 17:33A-2, the mandatory notice provision is more likely a preventive measure rather than a protective measure; meaning that the goal attributable to requiring such notice is to further the "development of fraud prevention programs" as opposed to protecting applicants ignorant of the consequences of a violation. As such, we do not conclude that the Legislature intended to preclude prosecution by the State of a violation where the form lacked the required language of N.J.S.A. 17:33A-6.
Another reason to reject defendant's claim is that he was aware of the "need to obtain accurate information in an application for insurance" and he admitted that he had read the required language on many occasions during his eighteen years working in the insurance business.

II
Defendant next argues that summary judgment was inappropriate on count one because there were material issues of fact with respect to his knowledge. Specifically, the motion judge determined that defendant knew he gave false or misleading answers on his medical history statement in his application for disability insurance.
N.J.S.A. 17:33A-4 lists actions that violate the Act. It states:
A person ... violates this act if he:
(1) Presents or causes to be presented any written ... statement as part of, or in support or opposition to, a claim for payment or other benefit pursuant to an insurance policy ... knowing that the statement contains any false or misleading information concerning any fact or thing material to the claim; or
(2) Prepares or makes any written ... statement that is intended to be presented to any insurance company ... knowing that the statement contains false or misleading information concerning any fact or thing material to the claim; or
(3) Conceals or knowingly fails to disclose the occurrence of an event which affects any person's initial or continued right or entitlement to (a) any insurance benefit or payment or (b) the amount of *802 any benefit or payment to which the person is entitled;
(4) Prepares or makes any written... statement, intended to be presented to any insurance company or producer for the purpose of obtaining: ...
(b) An insurance policy, knowing that the statement contains any false or misleading information concerning any fact or thing material to an insurance application or contract;
[N.J.S.A. 17:33A-4 (emphasis added).]
In Ledley v. William Penn Life Ins. Co., 138 N.J. 627, 651 A.2d 92 (1995), our Supreme Court held that summary judgment denying a beneficiary coverage where his application contained false answers regarding his medical history was appropriate.
There, the Court differentiated between subjective and objective answers, noting that "[c]ourts have been more lenient when reviewing an applicant's misrepresentation made in response to a subjective question than to an objective question." Id. at 636, 651 A.2d 92. The Court also noted that a question that asks whether an applicant has consulted a physician, or taken prescribed medications is an objective question. Ibid. (citing Russ v. Metropolitan Life Ins. Co., 112 N.J.Super. 265, 271, 270 A.2d 759 (Law Div.1970)). "Objective questions call for information within the applicant's knowledge, `such as whether the applicant has been examined or treated by a physician.'" Formosa v. Equitable Life Assur. Soc. of U.S., 166 N.J.Super. 8, 15, 398 A.2d 1301 (App.Div.1979). Subjective questions, on the other hand, concern the defendant's state of mind. Ledley, supra, 138 N.J. at 636, 651 A.2d 92. The Court explained the following:
The rationale behind the distinction between objective and subjective questions is that the answer to a subjective question will not constitute equitable fraud if `the question is directed toward probing the knowledge of the applicant and determining the state of his mind and ... the answer is a correct statement of the applicant's knowledge and belief.'
[Ibid. (quoting Ettelson v. Metropolitan Life Ins. Co., 164 F.2d 660, 665 (3d Cir.1947)).]
More importantly, "`the applicant's knowledge of the falsity of his representations is material only as respects subjective questions.' " Ibid. (quoting 1A John A. Appleman & Jean Appleman, Insurance Law and Practice §§ 246, at 129 (1981) (Appleman)).
We have held that summary judgment was even appropriate where a false answer was provided for a subjective question on an insurance application because "no reasonable fact-finder could conclude that [the applicant's] answer truly reflected his actual opinion." Liebling v. Garden State Indemnity, 337 N.J.Super. 447, 451, 767 A.2d 515 (App.Div.), certif. denied, 169 N.J. 606, 782 A.2d 424 (2001).
Here, defendant falsely answered the following questions: (1) "[h]ave you had any physical, mental or emotional condition, injury, or sickness in the past 5 years?"; and (2) "[h]ave you consulted or been attended by a physician or practitioner for any cause during the past 5 years?" At the very least, it is evident that the second interrogatory constitutes an objective question. Defendant answered "No" even though he had consulted Dr. Shafi on a number of occasions "in the past 5 years," indeed, quite near to the time he applied for disability insurance. Moreover, we note that on the day defendant answered the questions, he filled a prescription for Relafen given to him by Dr. Shafi.
*803 Because defendant provided a false answer to an objective question, his state of mind as to how to interpret the question is not material and is not relevant in determining its falsity. It is irrelevant whether defendant had the intent to deceive. The answer to the question was indisputably within his knowledge. Further, we are wholly unconvinced that defendant, in light of his extensive background in the insurance industry, could be confused about how to interpret the question such that he failed to "know" that his answer was false.
Here, there was no genuine issue of fact. The proofs were so one-sided that the State had to prevail as a matter of law on count one of the complaint. Brill, supra, 142 N.J. at 540, 666 A.2d 146.

III
Defendant next contends that the trial judge's assessment of penalties, attorneys' fees, and costs was cumulative and, therefore, should be reversed. We disagree. The pertinent statute provides:
Any person who violates any provision of [the Act] shall be liable, in a civil action brought by the commissioner in a court of competent jurisdiction, for a penalty of not more than $5,000 for the first violation, $10,000 for the second violation and $15,000 for each subsequent violation. The penalty shall be paid to the commissioner to be used in accordance with subsection e. of this section. The court shall also award court costs and reasonable attorneys' fees to the commissioner.
[N.J.S.A. 17:33A-5b]
Subsection e. addresses the establishment of the New Jersey Automobile Full Insurance Underwriting Association and Market Transition Facility Auxiliary Fund (the "Fund"). The penalties assessed under subsection b. are to be used to "help defray the operating expenses of the New Jersey Automobile Full Insurance Underwriting Association ... or [the] ... Market Transition Facility." N.J.S.A. 17:33A-5e.
Our Supreme Court, in Merin v. Maglaki, 126 N.J. 430, 599 A.2d 1256 (1992), decided that civil penalties brought under the Act were remedial in nature because they were rationally related to expenses associated with eradicating insurance fraud. Additionally, the Court held that where a single claim contains multiple fraudulent statements, each fraudulent violation constitutes a separate violation. Merin, supra, 126 N.J. at 432-33, 599 A.2d 1256.
In addition to the $5,000 penalty assessed by the motion judge on the first count, the trial judge ordered defendant to pay $2,500 as a penalty for count two and $36,210 in attorneys' fees for prosecuting both claims. Defendant submits that the $7,500 in penalties plus the attorneys' fees are "duplicative and excessive."
Defendant was found to have violated the Act both in his application for disability insurance and in his claim to collect the benefits. Under the holding in Merin, each is treated as a separate violation especially because defendant had the opportunity to recant his fraudulent statements made in his application by not submitting a claim for benefits. Instead, he persisted "in asserting a fraudulent claim by continuing to submit material misrepresentations" and as such "compound[ed] the evil that the legislature seeks to eliminate with the Act." Merin, supra, 126 N.J. at 437, 599 A.2d 1256.
Further, the Act expressly permits the application of attorneys' fees and costs in addition to penalties. N.J.S.A. 17:33A-5b. The penalties assessed pursuant to the Act are allocated to the administration of the "Fund" as stated in N.J.S.A. 17:33A-5e. *804 The attorneys' fees and costs are a separate expense that the statute actually mandates the courts to award in the event of a violation: "The court shall also award court costs and reasonable attorneys' fees to the commissioner." N.J.S.A. 17:33A-5b (emphasis added).
Moreover, the penalties, fees, and costs are likely not disproportionately weighted against the amount defendant would have potentially gained from a full year's disability benefits had his fraud been successful. Here, in fact, the trial judge only ordered defendant to pay $2,500 for his second violation where the statute permits a penalty of up to $10,000.
Defendant cites Merin for the proposition that "[c]ivil penalties ... will not survive constitutional scrutiny in the `stark situation' in which the State's recovery is `exponentially greater than the amount of the fraud' and `many times the amount of the Government's total loss.'" Merin, supra, 126 N.J. at 443, 599 A.2d 1256 (quoting United States v. Halper, 490 U.S. 435, 445, 109 S.Ct. 1892, 1900, 104 L.Ed.2d 487, 499 (1989)). In Merin, the Court recognized that investigating and prosecuting insurance fraud is a costly activity and one that is difficult to calculate for a particular claim; there is no expectation that the State precisely figure its costs for each case it handles. Id. at 445, 599 A.2d 1256. Furthermore, the Court rejected the defendant's argument that his penalty was disproportionately excessive to his offense because he was unsuccessful in executing his fraudulent claim, and, therefore, the insurer suffered no losses. Merin makes clear that the lack of success in securing insurance proceeds is not decisive, "[r]ather,... remedial civil penalties compensate the State for the costs incurred as a result of investigating and prosecuting insurance fraud." Ibid. Here, we conclude that the amount sought by the State was rationally related to its expenses in prosecuting defendant.

IV
Finally, defendant argues that he was deprived of effective assistance of counsel. We have carefully reviewed the record and conclude that this issue does not warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). This is a civil case, not a criminal one.
Affirmed.