**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5076-16T3

COMMISSIONER OF THE
NEW JERSEY DEPARTMENT
OF BANKING AND INSURANCE,

     Petitioner-Respondent,

v.

FIRST JERSEY INSURANCE AGENCY,
GERALD E. CONNER and JAMES W.
BLUMETTI,

     Respondents-Appellants.

_____

        Argued October 29, 2018 – Decided January 11, 2019

        Before Judges Sabatino and Sumners.

        On appeal from the New Jersey Department of
        Banking and Insurance.

        Eric H. Lubin argued the cause for appellant
        (Lomurro, Munson, Comer, Brown & Schottland,
        LLC, attorneys; Donald M. Lomurro and Eric H.
        Lubin, on the briefs).

        Ryan S. Schaffer, Deputy Attorney General, argued
        the cause for respondent (Gurbir S. Grewal, Attorney

General, attorney; Melissa H. Raksa, Assistant
Attorney General, of counsel; Ryan S. Schaffer, on the
brief).

PER CURIAM

Appellants First Jersey Insurance Agency, Gerald E. Connor, and James W. Blumetti appeal the final agency decision of the Commissioner of the Department of Banking and Insurance (DOBI) finding that First Jersey mailed an untrue, deceptive, or misleading postcard advertisement to 51,517 New Jersey senior citizens, in violation of various state insurance laws, and imposing a penalty against appellants, jointly and severally, in the amount of $100,000. Given our standard of review that requires us to defer to the Commissioner when his decision is based upon credible evidence in the record and is not contrary to state law, we affirm.

I

After receiving a complaint about a postcard solicitation by First Jersey, DOBI issued an Order to Show Cause (OTSC) alleging violations of the Insurance Producer Licensing Act, N.J.S.A. 17:22A-26 to -57 (Producer Act), and the Insurance Trade Practices Act, N.J.S.A. 17:29B-1 to -19 [and associated regulations]. DOBI sought to revoke the insurance producer licenses of First

Jersey, and Connor and Blumetti, the designated responsible license producers for First Jersey, and to impose monetary fines against them.

The postcard, initially mailed in August 2013, advertised the services of First Jersey, stating:

> 2013 MEDICARE UPDATE
> As of January 1st, a leading senior organization and other Medicare Supplement insurers may increase their rates up to 30% on Medicare supplement coverage. Many seniors have turned to HMOs seeking lower premiums only to find out that patient care is inadequate. Some HMOs have even closed their doors.
>
> Based on this there is now available a plan in your state to supplement Medicare at lower rates for seniors over 65 years of age.
>
> To find out how to qualify, return this Medicare Supplement inquiry card within 5 days.

The postcard had a blank space for recipients to fill in their contact information (address and phone number) and indicated that First Jersey was "[n]ot affiliated with or endorsed by any governmental agency." First Jersey mailed it to a targeted list of 51,517 New Jersey residents between the ages of sixty-five and seventy-five, out of which the company received 1,061 responses. Although the postcard was prepared by an outside firm, appellants are responsible for mailing it to the targeted audience.

The OTSC contained three counts alleging violations for mailing insurance advertisements to New Jersey residents. Count one alleged the mailing was an untrue, deceptive or misleading advertisement for insurance products, in violation of N.J.S.A. 17:22A-40a(2), (7) and (8),[1] N.J.S.A. 17:29B-

---

[1] N.J.S.A. 17:22A-40a(2), (7) and (8) provides:

> a. The commissioner may place on probation, suspend, revoke or refuse to issue or renew an insurance producer's license or may levy a civil penalty in accordance with subsection c. of section 20 [C.17:22A-45] of this act or any combination of actions, for any one or more of the following causes:
>
> (2) Violating any insurance laws, or violating any regulation, subpoena or order of the commissioner or of another state's insurance regulator;
>
> (7) Having admitted or been found to have committed any insurance unfair trade practice or fraud;
>
> (8) Using fraudulent, coercive or dishonest practices, or demonstrating incompetence, untrustworthiness or financial irresponsibility in the conduct of insurance business in this State or elsewhere;

4(2),[2] N.J.A.C. 11:2-11.2.[3]  Count two, as later amended, alleged violations of

N.J.S.A. 17:22A-40a(2) and (8), and N.J.A.C. 11:17A-2.6(a),[4] due to solicitation

---

[2]  N.J.S.A. 17:29B-4 (2) provides:

> The following are hereby defined as unfair methods of
> competition and unfair and deceptive acts or practices
> in the business of insurance:
>
> (2) False information and advertising generally.
> Making, publishing, disseminating, circulating, or
> placing before the public, or causing, directly or
> indirectly, to be made, published, disseminated,
> circulated, or placed before the public, in a newspaper,
> magazine or other publication, or in the form of a
> notice, circular, pamphlet, letter or poster, or over any
> radio station, or in any other way, an advertisement,
> announcement or statement containing any assertion,
> representation or statement with respect to the
> business of insurance or with respect to any person in
> the conduct of his insurance business, which is untrue,
> deceptive or misleading.

[3]  N.J.A.C. 11:2-11.2 provides: "Advertisements shall be truthful and not misleading in fact or in implication.  Words or phrases the meaning of which is clear only by implication or by familiarity with insurance terminology shall not be used."

[4]  N.J.A.C. 11:17A-2.6(a) provides:

> An insurance producer who solicits insurance shall be
> required to identify the following information to the
> person he or she is soliciting prior to commencing his
> or her solicitation:

of insurance products that failed to identify the name of the insurer to the person being solicited prior to commencing the solicitation.[5]  Count three alleged the mailing made misleading representations or incomplete or fraudulent comparisons of insurance policies for the purposes of inducing or tending to induce the recipient to lapse, forfeit, surrender, terminate, retain, or contract with another insurer, in violation of N.J.S.A. 17:22A-40a(2) and (8), and N.J.A.C. 11:17A-2:8.[6]

---

> 1. His or her name as it appears on his or her insurance producer license;
>
> 2. The name of the insurer, if known, or insurance producer, that he or she is representing; and
>
> 3. The nature of the relationship between the insurance producer and the insurer or insurance producer being represented.

[5]  Because count two was dismissed, it is not a subject of this appeal.

[6]  N.J.A.C. 11:17A-2:8 provides:

> No insurance producer shall make any misleading representations or incomplete or fraudulent comparison of any insurance policies or annuity contracts or insurers for the purpose of inducing, or tending to induce, any person to lapse, forfeit, surrender, terminate, retain, or convert any insurance

A-5076-16T3

Appellants contested the allegations and the matter was transmitted to the Office of Administrative Law for a hearing. However, a hearing was not conducted because a motion and cross-motion for summary judgment were filed. Relying upon certifications of Conner and DOBI Insurance Analyst Frank Biskup, which went factually unchallenged, the Administrative Law Judge (ALJ) issued a summary decision that DOBI had proven the violations alleged in counts one and three.

In the first of his two certifications, Biskup described the market shares and insurance rates of Medicare Supplement insurance carriers in New Jersey for the relevant time periods. In 2013, Horizon Healthcare Services, Inc., and Horizon Insurance Company had market shares of 12.7 percent and 12.6 percent, respectively. In 2013, Medicare supplement insurance rates increased on average by 2.4 percent with the highest increase being 15 percent, for a carrier with a market share of 1.9 percent. In 2014, Horizon Insurance Company had a market share of 24.9 percent. In 2014, Medicare supplement rates increased on average by 2.7 percent with the highest increase being 10.4 percent, to a carrier with a market share of 0.3 percent.

policy or annuity contract, or to take out a policy of insurance or annuity contract with another insurer.

The ALJ compared this information with a rate sheet from Horizon provided by appellants. The ALJ reviewed the rate sheet and noted that the Medicare supplement rates were in age attained brackets and concluded that rates would "jump considerably when the holder reaches [seventy], [seventy-five], or [eighty]." Based on the market share provided in Biskup's certification, the ALJ determined that Horizon was a leading senior organization, and according to the rate sheet, Horizon planned to raise rates by 30 percent and 27 percent. Accordingly, the ALJ found that part of the advertisements to be true.

On the other hand, the ALJ, found as false the part of the advertisements that stated, "and other Medicare Supplement insurers may increase their rates up to 30 percent on Medicare supplement coverage." The ALJ found that no other carrier proposed or was granted increases near 30 percent. Thus, the ALJ maintained the advertisements contained an untrue assertion with respect to the business of insurance that violated N.J.S.A. 17:22A-40a(2) and (7), and N.J.S.A. 17:29B-4(2). Concerning count three, the ALJ found that appellants violated the "twisting" regulation, N.J.A.C. 11:17A-2.8, because the misleading advertisements were aimed at persuading consumers to call them. The ALJ reasoned, "the solicitation was not entirely true and was undoubtedly aimed at persuading some recipients to trade in one policy for another."

In assessing civil penalties, the ALJ applied the seven-factor test set forth in Kimmelman v. Henkels & McCoy, Inc., 108 N.J. 123, 137–39 (1987), and recommended fines against appellants, jointly and severally, totaling $51,517.00; a fifty-cent penalty for each of the 51,517 violations in count one, and a fifty-cent penalty for each of the 51,517 violations in count three.

Both parties filed exceptions to the ALJ's initial decision with the Commissioner. Upon reviewing the parties' submissions, the Commissioner determined there was no genuine dispute of material facts and thus it was appropriate to decide the matter through summary decision.

The Commissioner agreed with DOBI's allegation in count one that First Jersey's mailings were, as a whole, misleading and deceptive and, therefore, violated N.J.S.A. 17:29B-4(2), N.J.S.A. 17:22A-40(a)(2) and (7), and N.J.A.C. 11:2-11.2. In reaching this decision, the Commissioner adopted, modified, or rejected several of the ALJ's findings.

First, the Commissioner modified the ALJ's finding that Horizon was the "leading senior organization," mentioned in the mailings because there was no specific language such as, health service corporation, insurer, or carrier, terms which would clearly indicate that Horizon was the entity being referenced. He also found that the term "senior organization," would not apply to a business

providing insurance in New Jersey. Consequently, he found the terminology used by appellants to be vague, which therefore contributed to the overall deceptive nature of the advertisements.

Second, the Commissioner rejected the ALJ's finding that "Horizon planned to raise rates by 30 percent and 27 percent for some of its policyholders." The Commissioner explained that the premium increases for the referenced policies were not the result of Horizon increasing its overall rate but were for "Attained Age" rated policies, which charge a different premium to policyholders depending on their age and will increase as the policyholder moves into an older age group bracket. Such policyholders were made aware at the time they purchased the policies that their premiums would rise when they reached certain age brackets, whereas "Community Rated" policies charge the same premium to all policyholders regardless of age and will not increase as the policyholder ages. Hence, the Commissioner found that the advertisements' assertion of a forthcoming 30 percent rate increase was false and misleading.

The Commissioner dismissed appellants' contention that the advertisements were accurate because they relied on information provided by a website known as medicare.gov. The Commissioner found the information provided by medicare.gov to be incorrect and reasoned it should have been

obvious to appellants, who are licensed producers with significant industry experience, that Horizon's rate sheet provided rates for Attained Age policies and not Community Rated policies.

Third, the Commissioner adopted the ALJ's findings that no Medicare Supplement carrier was granted a rate increase in 2013 or 2014 anywhere near 30 percent. The Commissioner found that the undisputed Biskup certification established that insurance rates increased markedly less, on average by 2.4 percent. The Commissioner also adopted the ALJ's rejection of appellants' contention that they had reasonably relied on one carrier's (United World's) proposed 30 percent increase. The Commissioner found it misleading for appellants to advertise a rate increase based on a carrier's proposed rate increase. He explained that DOBI usually adjusted such proposed rate increase downward. He also noted that appellants could not have relied on United World's proposed 30 percent rate increase when deciding to send out the advertisements because they did not obtain that proposal until after the advertisements were distributed.

Fourth, the Commissioner modified the ALJ's analysis of the advertisements' phrase "there is now available a plan in your state to supplement Medicare at lower rates . . . ." The ALJ found the statement to be false, but the

11

Commissioner rejected that portion of the analysis, finding it to be piecemeal, unnecessary and confusing. The Commissioner instead maintained the advertisements "should be evaluated on its plain language when read by a recipient consumer in our State." Therefore, the Commissioner reasoned:

> I must consider that this was a mass mailing by the [r]espondents, who had no knowledge of the Medicare Supplement product owned by the recipient consumer or the premium rate being paid by those consumers. Because of this, the [r]espondents had no way of knowing whether the statement in the advertisement[s] . . . [were] true or not for any particular . . . recipient.

Accordingly, the Commissioner found this phrase contributed to the overall deceptive and misleading nature of the advertisements.

Lastly, the Commissioner found the advertisements clearly sent a message to its recipients, who are less knowledgeable about how the health insurance system operates, that insurance rates were due to rise sharply. Additionally, he found that the appellants "utilized the advertisements as a scare tactic in an attempt to generate business, and such tactics are not appropriate of professional producers in our State."

With regard to count three, the Commissioner found that appellants' misleading and deceptive advertisements were meant to persuade the recipients to contact them to potentially switch carriers, in violation of N.J.S.A. 17:22A-

12

40a(2) and N.J.A.C. 11:17A-2.8. The regulation prohibits the use of false or misleading advertisements in order to induce the recipient to change an existing policy, otherwise known as "twisting." The Commissioner found that appellants "indisputably[] engaged in twisting by attempting to induce recipient consumers to buy insurance from another carrier through misleading and incomplete comparison of their current policy of which the [r]espondents had no knowledge . . . ." He found that a hearing was not necessary to determine appellants' state of mind because the Producer Act does not require a subjective analysis of whether they knew, or should have known, that any information in the advertisements was untrue. The objective conduct of the producer itself is the determinative factor. As the contested issues were legal in nature and did not require a subjective analysis, the case was ripe for summary decision.

As for the appellants' penalty, the Commissioner reviewed the ALJ's application of Kimmelman's seven-factor test, which assesses a civil penalty on the basis of: (1) the good or bad faith of respondent; (2) respondent's ability to pay; (3) the amount of profits obtained from the illegal activity; (4) the injury to the public; (5) the duration of the conspiracy; (6) the existence of criminal or

13

treble damages actions; and (7) respondent's past violations.[7]  108 N.J. at 137. The Commissioner adopted the ALJ's findings with modification of the findings related to factors two and three.

With respect to factor two, the ability to pay, the Commissioner determined that contrary to the ALJ's initial decision, appellants were responsible for demonstrating an inability to pay civil penalties and had failed to do so.[8]  Concerning factor three, profits from illegal conduct, the Commissioner reasoned that when considering profits from illegal activity, he is able to consider potential profits.  He found that each of the 51,517 misleading advertisements had the potential to result in a sale commission for appellants. Because of this great opportunity to profit from each advertisement, the Commissioner gave greater weight to this factor than the ALJ.

_____

[7] In addition, other factors may be considered to arrive at an appropriate penalty.  Kimmelman, 108 N.J. at 139-40.

[8] The Commissioner relied on the decision of the Department of Labor and Workforce Development, Division of Worker's Compensation, in Steven M. Goldman, Comm'r v. Kirti Shah, 2008 WL 4877082 (Sept. 2, 2008), which he reasoned implies that appellants have the burden to demonstrate an inability to pay.

Under the Producer Act, the Commissioner has the discretion to impose penalties not exceeding $5000 for the first offense, and not exceeding $10,000 for each subsequent violation of the act. N.J.S.A. 17:22A-45c. The Commissioner increased the ALJ's total penalty assessment of $51,517.00 to $100,000 against appellants, jointly and severally.[9] He explained that the increased penalty amount "is necessary to deter [appellants] and the producer industry as a whole for similar misconduct in the future, and to demonstrate the appropriate level of opprobrium for [appellants'] misleading advertising practices."

## II

Appellants raise several challenges to the Commissioner's summary decision. "Generally, we will not upset a State agency's determination in the absence of a showing that it was arbitrary, capricious or unreasonable, or that it lacked fair support in the evidence, or that it violated a legislative policy expressed or implicit in the governing statute." In re Camden Cnty. Prosecutor, 394 N.J. Super. 15, 22-23 (App. Div. 2007) (emphasis and internal quotations omitted) (quoting Cty. of Gloucester v. Pub. Emp't Relations Comm'n, 107 N.J.

_____

[9] The Commissioner rejected the higher $200,000 penalty sought by DOBI staff.

Super. 150, 156 (App. Div. 1969)). "The burden of demonstrating that the agency's action was arbitrary, capricious or unreasonable rests upon the [party] challenging the administrative action." In re Adoption of Amendments to Ne., Upper Raritan, Sussex Cty., 435 N.J. Super. 571, 582 (App. Div. 2014) (alteration in original) (quoting In re Arenas, 385 N.J. Super. 440, 443-44 (App. Div. 2006)).

In accordance with N.J.A.C. 1:1-12.5(b), a state agency's decision to grant a motion for summary decision is "substantially the same" as that governing a motion for summary judgment adjudicated by a trial court under Rule 4:46-2. Contini v. Bd. of Educ. of Newark, 286 N.J. Super. 106, 121 (App. Div. 1995). When reviewing on appeal an order granting summary judgment, we apply "the same standard governing the trial court." Oyola v. Liu, 431 N.J. Super. 493, 497 (App. Div. 2013). Summary judgment should be granted only when the record reveals "no genuine issue as to any material fact" and "the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). Although we "must give deference to [an] agency's . . . 'interpretation of statutes and regulations within its implementing and enforcing responsibility,' we are 'in no way bound by the agency's interpretation of a statute or its determination of a

strictly legal issue[.]'" Utley v. Bd. of Review, Dep't of Labor, 194 N.J. 534, 551 (2008) (citations omitted).

Summary judgment should be denied when the determination of material disputed facts depends primarily on credibility evaluations. Petersen v. Twp. of Raritan, 418 N.J. Super. 125, 132 (App. Div. 2011). Although both parties moved for summary decision, because judgment was granted in favor of DOBI, we consider the facts in a light most favorable to appellants. See Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995).

A.

Appellants initially argue the Commissioner's decision was arbitrary and capricious because the advertisements were based on facts and were not untrue, deceptive and misleading. They maintain the Commissioner "had to strain logic and plain language to hold otherwise." They argue that in stating that rates "may" increase, the term "may" was used in a common way to mean, "something is not guaranteed, but 'may' happen." According to appellants, the advertisements credibly relied on the Horizon rate sheet, which stated, "it would, and then actually did raise its rates by 30 percent" to support the validity of the advertisements. They argue the use of Biskup's certification is unreliable

hearsay and their evidence from the Medicare website proves that the referenced to Horizon rates pertain to Community rated policies. We are unpersuaded.

We discern no reason to upset the Commissioner's determination that the overall tenor of the postcard advertisements are untrue, deceptive and misleading. His reasoning is sound and logical. There appears little doubt that the advertisements sought to persuade senior citizens to contact First Jersey, so they could avoid alleged significant premium increases from their existing Medigap insurance provider. If the recipients purchased new coverage through First Jersey, the agency would in turn collect commissions from the premiums paid. The fact that over one thousand senior citizens responded by mail to the advertisements is evidence that the ad campaign was influential

## B.

Appellants next argue that, at a minimum, the matter should be remanded for an evidentiary hearing before an ALJ to assess appellants' state of mind in mailing the advertisements in order to determine whether they violated the law. To comply, the court must articulate factual findings and correlate them with the principles of law. They contend that the Producer Act requires the Commissioner to consider a licensee's intent or state of mind in mailing the advertisements. We disagree.

We favor DOBI's contention that it need not show appellants' state of mind in mailing the advertisements, based upon an analogous situation in State v. Nasir, 355 N.J. Super. 96, 106 (App. Div. 2002). In Nasir, we held that under the Insurance Fraud Prevention Act, N.J.S.A. 17:33A-1 to -30 ("Fraud Act"), which the Commissioner is also charged with enforcing, it was "irrelevant whether [the] defendant had the intent to deceive." Id. at 106. Thus, summary decision by the Commissioner was appropriate because the State only needed to establish that the defendant provided false information that was "within his knowledge," and defendant was held to a higher standard because of his background in the insurance industry. Ibid.

Like the company in Nasir, appellants' state of mind is irrelevant, and the misleading and false information in the advertisements was within their knowledge due to their insurance industry experience. The Producer Act prohibits "insurance unfair trade practice or fraud" and "[u]sing fraudulent, . . . or dishonest practices[.]" N.J.S.A. 17:22A-40a(7) and (8). N.J.A.C. 11:2-11.2 requires that "advertisements . . . shall be truthful and not misleading in fact or in implication." N.J.A.C. 11:17A-2.8, prohibits insurance providers from using "fraudulent comparison of any insurance policies . . . for the purpose of inducing, or tending to induce, any person to . . . take out another insurance

policy . . . with another insurer." Appellants fail to show that the Commissioner has misinterpreted the Producer Act and its governing regulations by determining that intent to deceive is not a necessary element of insurance fraud under the act. See Open MRI of Morris & Essex v. Frieri, 405 N.J. Super. 576, 583 (App. Div. 2009) (citing Nasir, 355 N.J. Super. at 106).

C.

Lastly, appellants contend the $100,000 penalty was excessive because, at most, there were only two violations and, at $10,000 maximum for each, the most they could be assessed is $20,000. Appellants assert the number of violations, not the number of postcard mailings, determines the civil penalties. N.J.S.A. 17:22A-45c. They argue the Commissioner did not rely on any evidence or special knowledge within his purview, and that he never sought to examine any actual profits they earned from the advertisements. They further argue, DOBI "has always imposed substantially smaller fines for insurance producers who disseminate[] untrue or deceptive advertisements[.]" Again, we are unpersuaded.

We "generally afford substantial deference to the actions of administrative agencies[,]" and thus, our "review of [their] choice of sanction is limited." In re License Issued to Zahl, 186 N.J. 341, 353 (2006). "Deference is appropriate

because of the 'expertise and superior knowledge' of agencies in their specialized fields and because agencies are executive actors[.]"  Ibid. (citations omitted) (quoting Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992)).

> In exercising . . . authority to alter a sanction imposed by an administrative agency, the [c]ourt can do so only when necessary to bring the agency's action into conformity with its delegated authority.  The [c]ourt has no power to act independently as an administrative tribunal or to substitute its judgment for that of the agency.  It can interpose its views only where it is satisfied that the agency has mistakenly exercised its discretion or misperceived its own statutory authority.
>
> [In re License of Polk, 90 N.J. 550, 578 (1982).]

"[T]he test in reviewing administrative sanctions is 'whether such punishment is "so disproportionate to the offense, in the light of all the circumstances, as to be shocking to one's sense of fairness."'"  Ibid. (quoting Pell v. Bd. of Educ., 313 N.E.2d 321, 327 (N.Y. 1974)).  See also In re Herrmann, 192 N.J. 19 (2006).

Here, the penalty – sanctioned by statute, N.J.S.A. 17:22A-45c – allows for $5000 for the first offense, and not exceeding $10,000 for each subsequent violation of the act.  In applying the Kimmelman test, the Commissioner reasonably decided that First Jersey should pay a fine for each of the 51,517 postcard advertisements it mailed.  Considering the Commissioner's sanction was meant to deter conduct such as appellants' and was based upon credible

evidence, we defer to his decision-making, concluding it is consistent with the law and does not shock our sense of fairness.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION