**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2846-15T4

JULIUS AND EVA SESZTAK,

     Plaintiffs-Appellants,

v.

GREAT NORTHERN INSURANCE
CO., INC., and WALTER B. HOWE
AGENCY, INC.,

     Defendants-Respondents.

_____

Argued April 24, 2018 – Decided November 14, 2018

Before Judges Yannotti, Mawla and DeAlmeida.

On appeal from Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-8318-12.

Eva Sesztak, appellant, argued the cause pro se (Frank M. Crivelli, on the brief).[1]

---

[1] Crivelli & Barbati, LLC, filed a merits brief on behalf of plaintiffs. Eva Sesztak thereafter filed a substitution of attorney indicating that she was proceeding pro se, and presented oral argument on her behalf. Julius Sesztak, although present at oral argument, declined to make an argument.

Thomas McKay, III argued the cause for respondent Great Northern Insurance Co., Inc. (Cozen O'Connor, attorneys; Thomas McKay, III, of counsel and on the brief; Charles J. Jesuit, Jr., on the brief).

Frederick M. Klein argued the cause for respondent Walter B. Howe Agency, Inc. (Sullivan & Klein, LLP, attorneys; Frederick M. Klein, on the brief).

The opinion of the court was delivered by

DeALMEIDA, J.A.D.

Plaintiffs Julius Sesztak and Eva Sesztak appeal the March 1, 2016 and April 15, 2016 orders of the Law Division granting judgment notwithstanding the verdict to defendants Great Northern Insurance Co., Inc. (GNIC) and Walter B. Howe Agency, Inc. (Howe). We affirm.

## I.

The following facts are taken from the record. Plaintiffs are married. In 1972, they purchased a home at 55 Bedens Brook Road in Montgomery Township. In 2004, the couple purchased the adjacent property at 49 Bedens Brook Road, on which they constructed a large, single-family residence. The home was completed in August 2008.

In 2008, plaintiffs obtained a mortgage on 49 Bedens Brook Road from Hudson City Savings Bank (HCSB). In the mortgage application, plaintiffs stated that "[a]fter today, we will live at 49 Bedens Brook Road" and that "[w]e

have never owned any property which is next to this property." Julius testified that the couple moved from 55 Bedens Brook Road to the new house "to get the money," because the mortgage was issued based on their representation that they resided there. According to the couple, they lived in the basement and in one upstairs bedroom of 49 Bedens Brook Road from the time they obtained the mortgage until August 2009, when they moved back to the home at 55 Bedens Brook Road. At that time, 49 Bedens Brook Road was rented to another couple who remained as tenants at the property until August 2010.

When the rental began, plaintiffs had State Farm Insurance Company (State Farm) homeowners policies in place for both 55 and 49 Bedens Brook Road. Homeowners policies cover only the principal residence of the property owners. When State Farm discovered that it insured both homes, the company compelled plaintiffs to declare which house was their principal residence. Eva[2] declared 55 Bedens Brook Road as the couple's principal residence. As a result, State Farm cancelled the homeowners policy for 49 Bedens Brook Road, effective June 10, 2010.

According to the trial testimony, the risk of property damage is greatly increased when a dwelling is not owner occupied because vacant dwellings have

---

[2] Because plaintiffs share a last name, we will refer to them by their first names.

A-2846-15T4

a higher experience of property loss and damage from fire, pipe breaks, and vandalism. In addition, tenants do not take as serious an interest in protecting their homes as do homeowners, raising the risk of loss when a home is rented. As a result, premiums charged for unoccupied or rented dwellings are higher than those charged on an owner's principal residence. Plaintiffs had previously obtained rental property coverage from State Farm for an income-producing property they owned in Hopewell. They were, therefore, aware that policies for rented homes have higher premiums than do homeowners policies. Eva testified that the couple had financial difficulties in June 2010, and could not afford the premiums for coverage of 49 Bedens Brook Road as a rental property.

On June 10, 2010, Eva visited the offices of Howe, an insurance broker with whom plaintiffs had a professional relationship, and met with Howe's Vice President, Bradley Keith. Eva was seeking insurance coverage for 49 Bedens Brook Road. She testified that she told Keith that she and her husband did not live at the house, but intended to move there in September 2010, or later that autumn. Keith's notes from the meeting, however, indicate several times that 49 Bedens Brook Road was plaintiffs' principal residence.[3]

---

[3] Keith died prior to trial. He gave a recorded statement during the investigation of plaintiffs' insurance claim, the audio of which was played for the jury and

A-2846-15T4

On June 21, 2010, Eva signed an application for homeowners insurance from FMI Insurance Co. (FMI) for 49 Bedens Brook Road. The application twice represented that the home was her only residence. Keith presented the application to FMI, which issued a homeowners policy for the property with a dwelling coverage limit of $1.5 million. Eva admitted repeatedly that she requested only $1.5 million in coverage and acknowledged that because Julius is a builder, the couple was concerned only with coverage sufficient to satisfy the mortgage on the home. At that time, plaintiffs were trying to sell 49 Bedens Brook Road for $3.5 million. In August 2010, FMI advised Eva that it was cancelling the policy, effective September 20, 2010, because plaintiffs failed FMI's credit check.

On September 17, 2010, Keith, acting as plaintiffs' agent, contacted a representative of GNIC to request issuance of a homeowners policy covering 49 Bedens Brook Road. Based on Eva's representations, Keith told the GNIC representative that the home was plaintiffs' principal residence, and was not rented or vacant. The GNIC representative confirmed with Keith that the house was not vacant, was not rented, and was occupied as plaintiffs' primary

---

entered into evidence pursuant to N.J.R.E. 804(b)(6). Keith stated that Eva told him that plaintiffs resided at 49 Bedens Brook Road, and that she decided not to renew the State Farm policy because of an increase in premiums.

residence. Relying on these statements, GNIC issued a homeowners policy to plaintiffs for the property for the period September 20, 2010 to September 20, 2011, with a dwelling coverage limit of $1.5 million. GNIC would not have issued the policy had the company been informed that 49 Bedens Brook Road was not plaintiffs' principal residence, or was vacant and listed for sale.

On November 8, 2010, a GNIC appraiser inspected 49 Bedens Brook Road. Eva was present during the inspection and said that the house was plaintiffs' principal residence. The inspector saw no personal effects in the house. She testified that the home was unheated, and appeared to be for sale, as the limited furniture there looked staged for purchasers. She concluded that plaintiffs did not reside there.

In addition, the inspector found the house to be underinsured, given that the $1.5 million in coverage was well below the house's value of approximately $3.225 million. The inspector testified that Eva told her that she did not want to raise the coverage limit because she needed only to cover the mortgage on the home. According to GNIC's guidelines, in order to obtain a homeowners policy, at least ninety percent of the property's replacement cost must be insured, the home cannot be vacant, and cannot be the owner's second residence unless GNIC also insures the owner's primary residence.

A-2846-15T4

The inspector reported her findings to GNIC, which took immediate action to cancel the policy. On November 19, 2010, GNIC issued a notice of cancellation effective December 24, 2010, at 12:01 a.m.[4]

On December 17, 2010, seven days prior to the cancelation date of the GNIC policy, a fire of undetermined cause destroyed the house at 49 Bedens Brook Road. The policy was still in effect and plaintiffs submitted a claim for $1.5 million, which included the replacement cost of the dwelling and personal items they claim were in the house at the time of the fire.

In a sworn statement of proof of loss, Eva stated that 49 Bedens Brook Road was "owner occupied" at the time of the fire. Julius did not sign the statement. Eva's statement contradicted an application for a mortgage on 55 Bedens Brook Road plaintiffs completed on December 13, 2010, four days before the fire. In that application, plaintiffs stated under penalty of perjury that they had lived at 55 Bedens Brook Road for at least the two years prior to the application and intended to live there as their primary residence. Julius testified that he signed the mortgage application on instructions of his wife, and that he neither read it beforehand, nor cared if the statements made in it were true.

---

[4] At trial, Eva denied receiving the first page of the notice of cancellation. During discovery, however, her counsel produced the entire notice.

During the investigation of plaintiffs' claim, Eva told an investigator that State Farm canceled its policy on 49 Bedens Brook Road because "you cannot have two home[s] on that policy at the same agency." She specifically denied that State Farm canceled the policy because the home was not owner occupied. This misrepresentation appeared designed to hide the fact that 49 Bedens Brook Road was not owner occupied at the time that Eva applied for insurance from GNIC. In addition, during the investigation, Eva swore under oath that as of October 2010, ninety percent of plaintiffs' clothing and shoes were at 49 Bedens Brook Road, along with eighty percent of their toiletries, towels, and other personal items. A November 2010 photograph of the master bedroom, taken during the GNIC inspection, depicts no personal items.

On February 15, 2012, GNIC denied plaintiffs' claim and voided and rescinded the policy ab initio after its investigation determined that plaintiffs obtained the policy by fraudulent misrepresentation, and made misrepresentations of material fact during the investigation. GNIC returned the premiums plaintiffs had paid on the policy. Notwithstanding the cancelation of the policy, GNIC was obligated to give HCSB, the innocent mortgagee, $1,400,033.36 to pay off the debt on plaintiffs' mortgage on 49 Bedens Brook Road. GNIC took an assignment of the mortgage from HCSB.

On December 17, 2012, plaintiffs filed a complaint in the Law Division against GNIC and Howe. They alleged against GNIC causes of action for breach of contract, vicarious liability, reformation, bad faith, gross negligence and willful misconduct, and consumer fraud. Against Howe, plaintiffs alleged causes of action for negligence, bad faith, gross negligence and willful misconduct, breach of fiduciary duty, and consumer fraud. Plaintiffs allege that Howe failed to obtain adequate insurance coverage for 49 Bedens Brook Road, and failed to properly investigate plaintiffs' loss claim.

On March 25, 2013, GNIC asserted counterclaims against plaintiffs for rescission of the policy based on equitable, legal, and common law fraud; unjust enrichment and restitution for GNIC's payment of plaintiffs' mortgage to HCSB; and violation of the New Jersey Insurance Fraud Prevention Act, N.J.S.A. 17:33A-1 to -30 (NJIFPA). On April 10, 2013, Howe asserted cross-claims against GNIC for contribution, indemnification, and contractual indemnification based on an agency agreement.

On February 4, 2015, GNIC moved to sever its equitable fraud counterclaim seeking rescission of the policy from the remaining claims. GNIC argued that plaintiffs are not entitled to a jury trial on the counterclaim, and

sought a separate bench trial. The trial court did not decide GNIC's motion, but permitted the counterclaim to go to the jury for an advisory opinion.

After discovery, both defendants moved for summary judgment. On September 25, 2015, the trial court entered an order granting GNIC's motion for summary judgment, in part, and dismissed plaintiffs' claims for bad faith, consumer fraud, and counsel fees against GNIC. The trial court also granted summary judgment in favor of Howe, in part, and dismissed all causes of action asserted against it except for negligence.

The matter was tried before a jury in January 2016. During trial, the court granted GNIC's motion to voluntarily dismiss its counterclaim for rescission of the policy based on legal fraud. After trial, GNIC moved for a directed verdict in its favor on its equitable fraud counterclaim, and for dismissal of plaintiffs' vicarious liability and reformation claims. The trial court denied that motion without prejudice, noting that although plaintiffs did not have a right to a jury trial on the equitable fraud counterclaim, the court would allow that counterclaim to go to the jury because plaintiffs had a right to a jury trial on GNIC's other counterclaims. The trial court later stated that it would reconsider GNIC's equitable fraud counterclaim after the jury rendered its verdict.

A-2846-15T4

On January 15, 2016, the jury returned its verdict. With respect to GNIC, the jury found that plaintiffs proved only breach of contract and awarded plaintiffs damages of $269,052.14, representing $24,966.94 for the dwelling and $244,085.20 for the contents of the dwelling. The jury found against GNIC on its counterclaims for equitable fraud, unjust enrichment, and violation of the NJIFPA. With respect to Howe, the jury found plaintiffs proved their negligence claim and awarded them $1,000,000 in damages. The jury rejected plaintiffs' claim of vicarious liability against Howe.[5]

On February 3, 2016, GNIC moved for judgment in its favor on all claims decided against it notwithstanding the verdict, judgment on its equitable fraud counterclaim, or in the alternative, a new trial. The following day, Howe moved for judgment in its favor notwithstanding the verdict on all claims decided against it, or in the alternative, for a new trial. The court interpreted plaintiffs' opposition to these motions to constitute a motion to modify the amount of the award for dwelling damages.

On March 1, 2016, the trial court granted defendants' motions and entered judgment in favor of defendants on all claims decided against them

---

[5] The trial court reduced the verdict against GNIC to $174,966.94 based on evidence of the value of the house's contents. Defendants agreed not to address their cross-claims at trial.

A-2846-15T4

notwithstanding the verdict. After a careful review of the record, the court concluded that, accepting as true all evidence supporting plaintiffs' position, and according them the benefit of all legitimate inferences from such evidence, reasonable minds could not differ on: (1) plaintiffs having made material misrepresentations in connection with the issuance of the GNIC homeowners policy insuring 49 Bedens Brook Road, and during the subsequent investigation of the fire, entitling GNIC to rescission of the policy; (2) the absence of a breach of contract by GNIC; and (3) the lack of negligence on the part of Howe. In addition, the trial court noted that the jury was inappropriately influenced by matters Eva raised in her summation, including the death of her son, and Julius's experience in escaping communism and being held in a concentration camp.

On April 15, 2016, the trial court amended the judgment, on application of GNIC, to add a money judgment in favor of GNIC for restitution on its unjust enrichment counterclaim of $1,400,033.36, the amount GNIC paid to HCSB, plus interest under Rule 4:42-11, and to affirm GNIC's right to retain the promissory note and mortgage it received from HCSB. This appeal followed.

II.

We review de novo the trial court's judgment with respect to GNIC's equitable fraud counterclaim seeking rescission of the homeowners policy.

12

Zaman v. Felton, 219 N.J. 199, 216 (2014). A party opposing a claim for rescission of a contract based on equitable fraud does not have a right to a jury trial. Weintraub v. Krobatsch, 64 N.J. 445, 455 (1974) (citations omitted). The trial court's findings of fact will not be disturbed "when supported by adequate, substantial and credible evidence." Zaman, 219 N.J. at 215 (quoting Toll Bros., Inc. v. Twp. of W. Windsor, 173 N.J. 502, 549 (2002)).

In order to rescind an insurance contract on grounds of equitable fraud, a party must demonstrate: (1) a material misrepresentation of a presently existing or past fact; (2) the maker's intent that the other party rely on the misrepresentation; and (3) detrimental reliance by the other party. First Am. Title Ins. Co. v. Lawson, 177 N.J. 125, 136-37 (2003) (quoting Liebling v. Garden State Indem., 337 N.J. Super. 447, 453 (App. Div. 2001)).

Unlike legal fraud, to rescind an insurance policy under equitable fraud an insurer need not prove that the insured had knowledge of the falsity and intended to deceive. See Ledley v. William Penn Life Ins. Co., 138 N.J. 627, 635 (1995); Jewish Ctr. of Sussex Cty. v. Whale, 86 N.J. 619, 624-25 (1981). "Even an innocent misrepresentation can constitute equitable fraud justifying rescission." Ledley, 138 N.J. at 635. The elements of rescission must be

established by clear and convincing evidence.  See Olesak v. Cent. Mut. Ins. Co., 215 N.J. Super. 155, 159 (App. Div. 1987).

The proofs in the trial court record clearly show that Eva's false and misleading statements to GNIC, through her agent Howe, satisfy the elements of equitable fraud.  According to Eva's testimony, when seeking issuance of the relevant homeowners policy she told Keith in June 2010, that plaintiffs intended to move into 49 Bedens Brook Road as their primary residence in September 2010, or later that autumn.  The evidence overwhelmingly shows this representation to be false.

On or about June 25, 2010, a realtor was enlisted to assist plaintiffs' efforts to sell 49 Bedens Brooks Road.  The realtor testified she advised plaintiffs to put furniture in the house because a vacant home is less appealing to potential purchasers than one that is partially furnished.  The realtor took photographs of the home, which depict the staged furniture and show most rooms completely empty of furniture.  Photographs of the bathrooms in the house, including the bathroom in the master bedroom, are devoid of personal effects, including toilet paper.  On June 27, 2010, Eva signed a Sellers' Property Condition Disclosure Statement that stated that plaintiffs did not occupy 49 Bedens Brook Road.  The realtor had a for-sale or rental listing of 49 Bedens Brook Road from June 2010

A-2846-15T4

until the time of the fire, and was actively trying to sell or rent the home until it was destroyed. The realtor testified that she observed no beds or any of Eva's clothing at 49 Bedens Brook Road. Plaintiffs produced no evidence that they moved into the vacant residence at any point, or that they had taken any affirmative steps towards leaving their longtime home at 55 Bedens Brook Road.

Indeed, on the morning of the fire Eva spoke to Keith via telephone. According to Keith's notes, she admitted that plaintiffs did not occupy 49 Bedens Brook Road, stating that they had a bed and some furniture in the house. Keith noted that Eva apologized for having told him that the couple would move into the home and said "I hope you don't think we did this on purpose."

The record also makes clear that Eva's misrepresentations were material. Information provided to an insurer is material if "a reasonable insurer would have considered the misrepresented fact relevant to its concerns and important in determining its course of action." Palisades Safety & Ins. Ass'n v. Bastien, 175 N.J. 144, 148 (2003) (quoting Longobardi v. Chubb Ins. Co. of N.J., 121 N.J. 530, 542 (1990)). It is undisputed that GNIC would not have issued a homeowners policy to plaintiffs had it been informed that the house was vacant and listed for sale or rent. GNIC policy prohibits issuance of a homeowners policy for a residence not occupied by its owner as a primary residence. This is

so because premium rates on homeowners policies do not reflect the higher risk of loss associated with a vacant home or a residence occupied by tenants.

In addition, although an intent to deceive is not a necessary element of equitable fraud, the evidence in the trial court record clearly establishes an intent on the part of Eva to mislead GNIC. Plaintiffs were well aware of the higher premiums associated with insuring a home that is not owner occupied. At the time that they obtained the homeowners policy on 49 Bedens Brook Road, plaintiffs were paying insurance on a rental property they owned with premiums higher than those applicable to an owner-occupied residence. Prior to seeking insurance from GNIC, plaintiffs were notified by State Farm that the homeowners policy on the house was canceled because it was not owner occupied. Eva concealed the reason for the State Farm termination from Keith by telling him that plaintiffs were about to move into the home when it was, in fact, listed for sale. We see no cause to disturb the trial court's conclusion that GNIC was entitled to rescission of the policy due to plaintiffs' equitable fraud.

In light of GNIC's entitlement to rescission of the policy, the trial court correctly found that the jury verdict in favor of plaintiffs on their breach of contract claim against GNIC and negligence claim against Howe could not stand. We apply the same standard as the trial court to determine whether a

moving party is entitled to judgment notwithstanding the verdict. <u>Riley v.</u> <u>Keenan</u>, 406 N.J. Super. 281, 298 (App. Div. 2009). We have described the court's review function as "quite a mechanical one" of determining

> [w]hether "the evidence, together with the legitimate inferences therefrom, could sustain a judgment in . . . favor" of the party opposing the motion; <u>i.e.</u>, if, accepting as true all the evidence which supports the position of the party defending against the motion and according him the benefit of all inferences which can reasonably and legitimately be deduced therefrom, reasonable minds could differ . . . .
>
> [<u>Judge v. Blackfin Yacht Corp.</u>, 357 N.J. Super. 418, 424 (App. Div. 2003) (quoting <u>Dolson v. Anastasia</u>, 55 N.J. 2, 5 (1969)).]

A judgment notwithstanding the verdict will be denied where the verdict is based primarily on credibility determinations. <u>Alves v. Rosenberg</u>, 400 N.J. Super. 553, 566 (App. Div. 2008) (citation omitted). However,

> [s]uch credibility determinations . . . may be removed from the jury's purview and a directed verdict granted when the testimony provided is uncontradicted and reliable, i.e., the testimony "is not improbable, extraordinary or surprising in its nature, or [where] there is no other ground for hesitating to accept it as the truth . . . ."
>
> [<u>Ibid.</u> (quoting <u>Ferdinand v. Agric. Ins. Co. of</u> <u>Watertown, N.Y.</u>, 22 N.J. 482, 494, 498 (1956)).]

In <u>Ferdinand</u>, the Court explained,

> when the testimony of witnesses, interested in the event or otherwise, is clear and convincing, not incredible in the light of general knowledge and common experience, not extraordinary, not contradicted in any way by witnesses or circumstances and so plain and complete that disbelief of the story could not reasonably arise in the rational process of an ordinarily intelligent mind, then a question has been presented for the court to decide and not the jury.
>
> [22 N.J. at 494 (citations omitted).]

A "jury's factual determination will be disturbed only if we find that the jury could not have reasonably used the evidence to reach its verdict." Sons of Thunder, Inc. v. Borden, Inc., 148 N.J. 396, 415 (1997).

Because Eva's misrepresentations warrant invalidation of the homeowners policy, reasonable minds could not differ with respect to whether GNIC breached that contract. Any contractual obligation GNIC may have had to plaintiffs was obviated by the equitable remedy of rescission.

Moreover, even if the policy was in effect, no reasonable juror could have found a breach of contract on GNIC's part, in light of the evidence adduced at trial. It is undisputed that the homeowners policy had a concealment or fraud provision that provided, "[t]his policy is void if you or any covered person has intentionally concealed or misrepresented any material fact relating to this policy before or after a loss."

A-2846-15T4

A concealment or fraud clause applies "not only to the insured's misrepresentations made when applying for insurance, but also to those made when the insurer is investigating a loss." Longobardi, 121 N.J. at 539. The burden of proof for an affirmative defense of violation of a policy provision for fraud or false swearing is by a preponderance of the evidence. Liberty Mut. Ins. Co. v. Land, 186 N.J. 163, 177-78 (2006); Italian Fisherman, Inc. v. Commercial Union Assurance Co., 215 N.J. Super. 278, 281-85 (App. Div. 1987).

As discussed at length above, even under Eva's version of events, when obtaining the homeowners policy she made the material misrepresentation that plaintiffs were soon to make 49 Bedens Brook Road their primary residence. This false statement, intended to obtain insurance coverage at a premium rate less than would be applicable to a vacant home, induced GNIC to issue the policy. As a result, plaintiffs received coverage for a risk exceeding the risk their premiums were calculated to cover. There is no reasonable way to interpret the evidence to reach the conclusion that plaintiffs were entitled to this coverage despite their violation of the concealment and fraud clause of the policy.

We turn to GNIC's unjust enrichment counterclaim for restitution for the amount it paid to HCSB, which was rejected by the jury. Restitution for unjust enrichment is an equitable remedy available when there is no adequate remedy

at law.  <u>Nat'l Amusements, Inc. v. N.J. Tpk. Auth.</u>, 261 N.J. Super. 468, 478 (Law Div. 1992).  To establish a claim for unjust enrichment a "plaintiff must show both that the defendant received a benefit and that retention of that benefit without payment would be unjust."  <u>VRG Corp. v. GKN Realty Corp.</u>, 135 N.J. 539, 554 (1994) (citations omitted).

GNIC was obligated under the "mortgage or loss payee" provision of the homeowners policy to pay HCSB, an innocent mortgagee, $1,400,033.36.  This obligation arose because of plaintiffs' material misrepresentations to GNIC when obtaining the homeowners policy.  Plaintiffs benefitted because their debt to HCSB was satisfied.  Plaintiffs were unjustly enriched, even when all of the evidence admitted at trial is viewed in the light most favorable to them.  They made no convincing argument to reverse the trial court's grant of judgment notwithstanding the verdict on this claim.

The jury verdict that Howe was negligent in obtaining insurance coverage for plaintiffs also does not withstand scrutiny.  "It is fundamental that a case sounding in negligence requires a showing of a duty, a breach of that duty and foreseeable injury proximately caused by the breach."  <u>Anderson v. Sammy Redd & Assocs.</u>, 278 N.J. Super. 50, 56 (App. Div. 1994) (citation omitted). With respect to the duty of an insurance broker, the obligations are

(1) to procure the insurance; (2) to secure a policy that is neither void nor materially deficient; and (3) to provide the coverage he or she undertook to supply. If an agent or broker fails to exercise the requisite skill and diligence when fulfilling those obligations, then there is a breach in the duty of care, and liability arises.

[President v. Jenkins, 180 N.J. 550, 569 (2004) (citing Rider v. Lynch, 42 N.J. 465, 476 (1964)).]

During trial, Eva repeatedly admitted that she requested Howe to obtain a homeowners policy with $1.5 million in coverage. This is precisely the policy and coverage Howe obtained for plaintiffs. Only once in her testimony did Eva suggest that she did not ask specifically for $1.5 million in coverage. On her last day of testimony, Eva testified that when she met with Keith she showed him the declarations page of the canceled State Farm policy "and I told him, match up that insurance, that's all I want. I didn't tell him, make it 1 million 500."

Yet, plaintiffs were issued not one, but two, policies with a $1.5 million coverage limit after Eva's conversation with Keith. The policy obtained through Howe from FMI had a $1.5 million coverage limit. Plaintiffs provided no evidence that they objected to the coverage limit, or questioned Keith about it. After the FMI policy was canceled, GNIC issued its policy with a $1.5 million coverage limit. Again, plaintiffs did not object. Nor did they question Keith

about it, or explain why, if they had requested a policy with a higher coverage limit, Keith would have forgone the higher commission he would have earned for such a policy. In fact, during post-trial arguments Eva conceded that she accepted the GNIC policy and told Keith that "it's okay."

To the extent that $1.5 million was insufficient to cover the value of the home, it is plaintiffs who took the risk of being underinsured. "[T]here is no common law duty of a carrier or its agents to advise an insured concerning the possible need for higher policy limits upon renewal of the policy." Wang v. Allstate Ins. Co., 125 N.J. 2, 11-12 (1991). We see no reason why such a duty would arise when an insured is obtaining coverage.

In Sobotor v. Prudential Prop. & Cas. Ins. Co., 200 N.J. Super. 333, 339 (App. Div. 1984), we held that a special relationship between an insured and a broker may give rise to a duty for the broker to advise the insured of available policies with more coverage than requested by the insured. We limited our holding, however, to those instances in which an insured "knew nothing about the technical aspects of insurance policies, [and] placed faith in," and relied on, the broker's expertise. Ibid. Those circumstances are not present here.

To the contrary, the record is clear that Eva was well aware of the difference between homeowners insurance and coverage for a home that is

22

vacant or rented. At the time that she obtained insurance through Howe, she and Julius were paying higher premiums on an income-producing home they owned. In addition, the record is replete with evidence that Eva misrepresented the nature of the occupancy and use of 49 Bedens Brook Road, and intentionally sought coverage of only $1.5 million to cover the mortgage on the property. At the same time, she was attempting to sell the home for more than $3 million, evidencing that she was knowingly underinsuring the property. In addition, plaintiffs did not allege a special relationship with Howe in their complaint. <u>See Wang</u>, 125 N.J. at 15. We agree with the trial court's conclusion that there is no evidence in the record to support a finding that Howe had a duty to advise plaintiffs to seek a policy with a higher coverage limit.

Howe raises additional arguments regarding what it describes as Eva's inappropriate remarks during summation. In addition to the comments noted by the trial court, Howe contends that Eva sought compensation for torts not alleged in the complaint, and, contrary to instructions from the court, stated "that the defendants were using their financial strength to wear down" plaintiffs. In light of our previously stated holdings, we do not address these arguments.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2846-15T4